UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ALFRED HARDING, et al.,<br><br>Defendants. | No. 2:19-cv-00871-WBS-CKD<br><br>ORDER AND<br><br>FINDINGS AND RECOMMENDATIONS<br><br>(ECF No. 20) |

Presently before the court is the United States' motion for default judgment against defendants Alfred Harding and Capital Investments Trust. (ECF No. 20.) Defendants have not responded to plaintiff's motion or complaint, but defendant Harding did file a "Motion for Explanation" regarding the clerk's entry of default. (ECF No. 15.) At the hearing on the present motion, plaintiff's counsel appeared telephonically and defendants did not appear. For the following reasons the court recommends granting the United States' motion for default judgment.

BACKGROUND

On May 15, 2019, the United States filed the present action seeking to establish defendant Alfred Harding as the true owner of real property located in Weed, California (the "Subject Property")[1] and foreclose federal tax liens against the Subject Property, pursuant to 26 U.S.C. §§

---

[1] "The Subject Property of this action is commonly referred to as Unit 3, Lot 155, Lake Shastina, Weed, CA 96094, and is more particularly described as follows: Lot 155 of Unit 3 of Lake

1

7401 and 7403.  (ECF No. 1.)

Harding acquired the Subject Property on May 31, 2007.  (Id. at ¶ 12.)  On December 26, 2007, Harding transferred his interest in the Subject Property to Capital Investments Trust through a quitclaim deed, which provided that, "[t]his is a bonafide gift and the grantor received nothing in return[.]"  (Id. at ¶ 13.)  The deed was recorded with the Siskiyou County Recorder on January 22, 2008.  (Id.)

On March 15, 2018, the United States filed suit against defendant Alfred Harding in the Northern District of California to reduce federal income tax assessments for years 2002 to 2013 to a judgment.  (ECF No. 1 at ¶ 14.)  On November 12, 2019, judgment was entered against Harding for his income tax liabilities for the taxable years 2002 through 2013 in the amount of $5,402,042.51.  See Case No. 3:18-cv-01652 Dkt. Nos. 51, 52.

The United States' present complaint alleges that Capital Investments Trust was created by Harding to shield assets from his creditors, and therefore the transfer of the Subject Property has no effect under California's Uniform Fraudulent Transfer Act, Cal. Civ. Code § 3439.04.  (ECF No. 1 at ¶ 32.)  As evidence of this fraud the United States asserts that Capital Investments Trust: does not have a valid Taxpayer Identification Number, but has used a fictitious one; has never filed tax returns; does not have federal or state records; uses the same mailing address as defendant Harding; has had checks deposited on its behalf by defendant Harding; and has been used as a vehicle for other property purchases by Harding, among other things.  (ECF No. 20-1 at 6-7.)  The United States also puts forth Harding's deposition testimony in the Northern District case, wherein Harding invoked the Fifth Amendment when asked about his interest in, control over, and purpose in creating Capital Investments Trust.  (Id. at 7.)

The United States requests the court enter a default judgment against Harding and Capital Investments Trust finding: (A) Alfred Harding to be the true owner of the Subject Property; (B) Harding's sale of the Subject Property to Capital Investments Trust to be fraudulent; (C) to the extent that Capital Investments Trust holds an interest in the Subject Property, it does so as a

---

Shastina Subdivision as recorded in town map book 4, pages 169 to 172 inclusive in the records of the County of Siskiyou in the State of California."  (ECF No. 1 at ¶ 11.)

nominee or alter ego of Alfred Harding; (D) the United States has valid federal tax liens against the Subject Property; (E) that the federal tax liens against Alfred Harding encumbering the Subject Property should be foreclosed; and (F) that the United States be permitted to submit an Order of Foreclosure and Judicial Sale of the Subject Property, consistent with the Stipulation Regarding Priority between the United States and Siskiyou County.[2] (ECF Nos. 1 at 9-10, 21-1 at 13-14.)

LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action. See Fed. R. Civ. P. 55(a). However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986)). Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this determination, the court considers the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Default judgments are ordinarily disfavored. Id. at 1472.

As a general rule, once default is entered, well-pleaded factual allegations in the operative complaint are taken as true, except for those allegations relating to damages. TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); accord Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002). In addition, although well-pleaded allegations in the

---

[2] Siskiyou County is named as a defendant because the United States believes the County may claim an interest in the Subject Property. (ECF No. 1 at ¶ 10.)

complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)); accord DIRECTV, Inc. v. Hoa Huynh, 503 F.3d 847, 854 (9th Cir. 2007) (noting that a defendant does not admit facts that are not well-pled or conclusions of law); Abney v. Alameida, 334 F. Supp. 2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not be entered on a legally insufficient claim."). A party's default does not establish the amount of damages. Geddes, 559 F.2d at 560.

DISCUSSION

Appropriateness of the Entry of Default Judgment Under the Eitel Factors

1. *Factor One: Possibility of Prejudice to Plaintiff*

The first Eitel factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and such potential prejudice to the plaintiff militates in favor of granting a default judgment. See PepsiCo, Inc., 238 F. Supp. 2d at 1177. The United States filed suit nine months ago, and defendants have failed to respond to the complaint. The present litigation therefore cannot move forward, prejudicing the Government by leaving it no other recourse but to seek a default judgment. Accordingly, the first factor weighs in favor of entering a default judgment.

2. *Factors Two and Three: The Merits of Plaintiff's Substantive Claim and the Sufficiency of the Complaint*

The court considers the merits of plaintiff's substantive claim and the sufficiency of the complaint together because of the relatedness of the two inquiries. The court must consider whether the allegations in the complaint are sufficient to state a claim on which plaintiff may recover. See Danning, 572 F.2d at 1388; PepsiCo, Inc., 238 F. Supp. 2d at 1175.

The United States requests that Alfred Harding be declared the true owner of the Subject Property, the transfer between Harding and Capital Investments be set aside as fraudulent, the court find that the Government has valid tax liens against the Subject Property, and the tax liens be foreclosed. (ECF Nos. 1 at 9-10, 21-1 at 13-14.)

The crux of the Government's argument is that the transfer of the Subject Property was fraudulent under California's Uniform Fraudulent Transfer Act ("UFTA"). California Civil Code § 3439.04 provides:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation...with the actual intent to hinder, delay, or defraud any creditor of the debtor.

"Whether there is actual intent to hinder, delay, or defraud under UFTA is a question of fact to be determined by a preponderance of evidence." In re Beverly, 374 B.R. 221, 235 (B.A.P. 9th Cir. 2007). "Once the creditor has shown that the conveyance is presumptively fraudulent, the burden shifts to the party defending the transfer." Id. (citing Whitehouse v. Six Corp., 40 Cal.App.4th 527, 533 (1995)).

The UFTA identifies the following eleven "badges of fraud" used to determine fraudulent intent: (1) whether the transfer was to an insider; (2) whether the debtor retained possession or control of the property after the transfer; (3) whether the transfer was disclosed or concealed; (4) whether before the transfer was made, the debtor had been sued or threatened with suit; (5) whether the transfer was of substantially all the debtor's assets; (6) whether the debtor absconded; (7) whether the debtor removed or concealed assets; (8) whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred; (9) whether the debtor was insolvent or became insolvent shortly after the transfer was made; (10) whether the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) whether the debtor transferred the essential assets of a business to a lienholder that then transferred them to an insider of the debtor. See Cal. Civ. Code § 3439.04(b); Acacia Corp. Mgmt., LLC v. U.S., 2013 WL 57690, *6 (E.D. Cal. Jan. 4, 2013). "The UFTA list of 'badges of fraud' provides neither a counting rule, nor a mathematical formula. No minimum number of factors tips the scales toward actual intent. A trier of fact is entitled to find actual intent based on the evidence in the case, even if no 'badges of fraud' are present." In re SCI Real Estate Investments, LLC, 2013 WL 1829648 at *4 (Bankr. C.D. Cal. May 1, 2013).

As evidence of fraud the Government points to the interconnectedness of Harding and

Capital Investments, the questionable activities of Capital Investments (that it has never filed tax returns and used a fictitious Taxpayer Identification Number), the lack of consideration in the transfer, Harding's insolvency, Harding's continued control over the Subject Property, and Harding's assertion of the Fifth Amendment at his deposition in the Northern District case. (ECF No. 20-1 at 6-7.)

Regarding the last point, pursuant to Federal Rule of Civil Procedure 32(a)(8), a deposition taken in an earlier action can be used in a later action involving the same subject matter between the same parties. The Northern District case involved Harding's delinquent taxes, Harding's relationship with Capital Investments Trust, the Subject Party, and the same parties. Accordingly, the deposition can be used in the present case.

Additionally, courts are free to draw an adverse inference premised on a defendant's use of the Fifth Amendment. See e.g., S.E.C. v. Colello, 139 F.3d 674, 677 (9th Cir. 1998) ("Parties are free to invoke the Fifth Amendment in civil cases, but the court is equally free to draw adverse inferences from their failure of proof."). In the Northern District case, defendant Harding asserted the Fifth Amendment when the United States inquired about his relationship with Capital Investments Trust, whether the Trust was created to hide his assets, and whether it holds interest in the Subject Property as his nominee or alter ego. The court is therefore free to draw an adverse inference from Harding's use of the Fifth Amendment regarding these questions.

Accordingly, based on the factors mentioned above, the Government has shown the sufficiency of its complaint, and its claims are supported by relevant precedent. These two factors favor entry of a default judgment.

3. *Factor Four: The Sum of Money at Stake in the Action*

Under the fourth factor cited in Eitel, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." PepsiCo, Inc., 238 F. Supp. 2d at 1176-77; see also Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 500 (C.D. Cal. 2003). In this case, the Government is seeking over $5 million from Harding due to his unpaid taxes. While the Government concedes this amount is "substantial," the amount was determined by the Northern District. Additionally, the United States does not anticipate

recovering "anywhere near the amount owed" through the sale of the Subject Property. (ECF No. 20-1 at 11.) Therefore, due to the prior judgment already being entered for over $5 million, and the amount at stake here likely much less than that amount, the sum of money at stake does not preclude the entry of a default judgment.

    4.    *Factor Five: The Possibility of a Dispute Concerning Material Facts*

The court may assume the truth of well-pleaded facts in the complaint following the clerk's entry of default. Thus, there is no likelihood that any genuine issue of material fact exists. See, e.g., Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists"); accord Philip Morris USA, Inc., 219 F.R.D. at 500; PepsiCo, Inc., 238 F. Supp. 2d at 1177. As such, the court concludes that the fifth Eitel factor favors default judgment.

    5.    *Factor Six: Whether the Default Was Due to Excusable Neglect*

In this case, there is no indication in the record that defendants' default was due to excusable neglect. Despite having been served with the Government's complaint, the request for entry of default, and the instant motion for default judgment, defendants have failed to respond. While defendant Harding did file a "Motion for Explanation" (ECF No. 15), he has not responded to the complaint or addressed any excusable neglect. Accordingly, this Eitel factor favors the entry of a default judgment.

    6.    *Factor Seven: The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits*

"Cases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472. However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. PepsiCo, Inc., 238 F. Supp. 2d at 1177; see also Craigslist, Inc. v. Naturemarket, Inc., 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010). Accordingly, although the court is cognizant of the policy in favor of decisions on the merits—and consistent with existing policy would prefer that this case be resolved on the merits—that policy does not, by itself, preclude the entry of default

judgment.

In sum, upon consideration of all the Eitel factors, the court concludes that the United States is entitled to a default judgment against defendants and recommends that a default judgment be entered. All that remains is a determination of the specific relief to which plaintiff is entitled.

Terms of the Judgment to be Entered

After determining that a party is entitled to entry of default judgment, the court must determine the terms of the judgment to be entered. See Craigslist, Inc., 694 F. Supp. 2d at 1061.

In its motion for default judgment, the United States prays for the following relief:

> A. That this Court determine and adjudge that Alfred Harding is the true owner of the Subject Property;
> B. That this Court determine and adjudge that the transfer of the Subject Property to Capital Investments Trust should be set aside as a fraudulent conveyance;
> C. That this Court determine and adjudge that to the extent that Capital Investments Trust holds an interest in the Subject Property, it does so as a nominee or alter ego of Alfred Harding;
> D. That this Court determine and adjudge that the United States has valid federal tax liens against all property and rights to property of Alfred Harding, including, but not limited to, his interest in the Subject Property;
> E. That the federal tax liens against Alfred Harding and against Capital Investments Trust, as Nominee of Alfred Harding, encumbering the Subject Property, be foreclosed; [and]
> F. That the United States be allowed to submit an Order of Foreclosure and Judicial Sale of the Subject Property, consistent with the Stipulation Regarding Priority between the United States and Siskiyou County (Dkt. Nos. 13-14).

(ECF No. 20-1 at 13-14).

Because the court recommends finding the transfer fraudulent, the court does not address the Government's request to find Capital Investments Trust an alter ego or nominee of Alfred Harding.[3] The remainder of the Government's prayer is appropriate under the circumstances.

CONCLUSION

IT IS HEREBY ORDERED that within five days after these findings and

---

[3] At the hearing on this matter the Government asserted these points were in the alternative.

8

recommendations are filed, plaintiff shall serve a copy of the findings and recommendations on defendants by mail at the address where service of process was effected, or at any more recent address known to plaintiff, and shall file a proof of such service forthwith.

Further, for the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for default judgment (ECF No. 20) be GRANTED;

2. Judgment be entered in plaintiff's favor and against defendants;

3. Alfred Harding be found to be the true owner of the Subject Property;

4. The transfer of the Subject Property to Capital Investments Trust be set aside as a fraudulent conveyance;

5. The United States be found to have valid federal tax liens against all property and rights to property of Alfred Harding, including, but not limited to, his interest in the Subject Property;

6. That the federal tax liens against Alfred Harding and against Capital Investments Trust, encumbering the Subject Property, be foreclosed; and

7. That the United States be allowed to submit an Order of Foreclosure and Judicial Sale of the Subject Property, consistent with the Stipulation Regarding Priority between the United States and Siskiyou County (ECF Nos. 13, 14).

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may

////
////
////
////

waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

IT IS SO ORDERED AND RECOMMENDED

Dated: February 20, 2020

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

16.harding.871